```
                                                              O
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| APPAREL PRODUCTION SERVICES, INC., § § § Plaintiff, § VS. § VS. § § INDIANA TRANSPORT, S.A. DE C.V. § d/b/a INDIANA TRANSPORT and § TRAFAGO FORWARDING, INC., § § Defendants. § | | CIVIL ACTION NO. L-08-26 |

| | | |
|---|---|---|
| APPAREL PRODUCTION SERVICES, INC., § § § Plaintiff, § VS. § § § TRANSPORTES DE CARGA FEMA, S.A. § DE C.V. and TRAFAGO FORWARDING, § INC., § § Defendants. § | | CIVIL ACTION NO. L-08-62 |

<u>MEMORANDUM AND ORDER</u>

These cases arise out of losses of goods by highjacking in Nuevo Laredo, Mexico. On two separate occasions, Plaintiff Apparel Production Services, Inc. ("APS") had shipments of sewing machines and fabric delivered from several United States locations to Defendant Trafago Forwarding, Inc.'s ("Trafago") Laredo, Texas warehouse on various bills of lading. APS then hired Trafago to, among other duties, obtain the customs documents for the goods and prepare the goods for shipment from

1

Laredo to Nuevo Laredo. Trafago picked Defendants Indiana Transport, S.A. de C.V. ("Indiana") and Transportes de Carga FEMA, S.A. de C.V. ("FEMA") to actually transport the goods to Nuevo Laredo. There, a Mexican line haul carrier, Aril, was to pick up the goods and carry them to their ultimate destinations in Puebla/Xalapa, Mexico. The record reflects that Aril's selection was arranged by APS. After passing through Mexican customs but before delivering the goods to Aril, FEMA and Indiana's drivers were highjacked by unknown criminals, and the goods were stolen. Subsequently, APS filed two actions against Defendants under the Carmack Amendment, 49 U.S.C. § 14706, and state tort and contract law.

Now pending are two motions for summary judgment by APS on its Carmack Amendment claims. (Dkt. No. 29 in L-08-26 and Dkt. No. 36 in L-08-62.) Also pending are two counter-motions for summary judgment, one by Defendants Trafago and Indiana (Dkt. No. 42 in L-08-26) and one by Defendants Trafago and FEMA (Dkt. No. 44 in L-08-62). The Court considers these motions in a consolidated manner pursuant to its Order filed February 9, 2009. (See Dkt. No. 59.)

Application of Carmack Amendment to Extra-Territorial Losses

Defendants argue that the Carmack Amendment cannot apply to losses of cargo occurring in Mexico. The Carmack Amendment establishes liability of a carrier or freight forwarder, which

2

provides transportation or service subject to jurisdiction under 49 U.S.C. § 13501 or § 13531:

> for the actual loss or injury to property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or <u>from a place in the United states to a place in an adjacent foreign country when transported under a through bill of lading</u>.

49 U.S.C. § 14706(a)(1) (emphasis added). Under 49 U.S.C. § 13501(1)(E), the Secretary of Transportation and the Surface Transportation Board ("STB")'s jurisdiction covers transportation by motor carrier "between a place in . . . the United States and a place in a foreign country <u>to the extent the transportation is in the United States</u>."[1]  § 13501(1)(E) (emphasis added).

Defendants argue that the emphasized text in § 13501 creates a strict geographical limitation to the Secretary's jurisdiction and, therefore, negates Carmack's applicability to losses occurring outside the United States. Defendants cite <u>Berlanga v. Terrier Transp., Inc.</u> to support this argument. 269 F. Supp. 2d 821 (N.D. Tex. 2003). In <u>Berlanga</u>, the defendant issued a Mexican through bill of lading covering transportation of household goods from Mexico City, Mexico to Plano, Texas. The goods were damaged during the domestic leg of the shipment.

---

[1] Section 13531 is nearly identical to § 13501, but relates to the Secretary's jurisdiction over service/transportation by freight forwarders.

Relying on § 13501, the court found it "now plain that the international leg of such a shipment is not covered by Carmack." Id. at 827.

Defendants cite Project Hope v. M/V IBN Sina for the same proposition. 250 F.3d 67 (2d Cir. 2001). There, the plaintiff contracted with the defendants to carry insulin from Virginia to Cairo, Egypt on a through bill of lading. The insulin was damaged during the initial Virginia leg. The issue was whether an intrastate leg of the shipment fell under Carmack. The Second Circuit, looking to the intended nature of the entire transportation, concluded that "the Carmack Amendment applies throughout the entire portion of the shipment taking place in the United States, including intrastate legs of the shipment." Id. at 74-75. It is noteworthy that Project Hope did not involve transportation to an adjacent foreign country. Further, the opinion only explained that a seemingly intrastate loss could come under Carmack if the transportation was the beginning of a longer journey that would cross state lines.

Other courts have consistently applied, or been ready to apply, the Carmack Amendment to cover losses occurring in Mexico or Canada during through transportation initiated in the United States. See e.g., Mex. Power & Light Co. v. Tex. Mex. Ry. Co., 67 S.Ct. 1440 (1947); Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77 (2d Cir. 2004); Tempel Steel

4

Corp. v. Landstar Inway, Inc., 211 F.3d 1029 (7th Cir. 2000); Trailer Marine Transp., Corp. v. Fed. Mar. Comm'n, 602 F.2d 379, 389 n.46 (D.C. Cir. 1979). Further, a recent opinion, discussing § 13501 and § 14706's long history, distinguished Berlanga and Project Hope and concluded that transportation to or from an adjacent foreign country can come under the Carmack Amendment so long as there is a through bill of lading governing the transportation. Sompo Japan Ins. Co. v. Union Pac. R.R. Co., 456 F.3d 54, 66 (2d Cir. 2006).

The Court concludes, therefore, that the losses in the instant cases could be subject to Carmack under § 14706(a), but only if the goods were being transported "under a through bill of lading."

## Through Bill of Lading?

Neither the Carmack Amendment, the Federal Bills of Lading Act, 49 U.S.C. § 80101, et seq., nor the Uniform Commercial Code define a through bill of lading.

A simple bill of lading, however, is defined as "a document acknowledging the receipt of goods by a carrier or by the shipper's agent and the contract for the transportation of those goods; a document that indicates the receipt of goods for shipment and that is issued by a person engaged in the business of transporting or forwarding goods." BLACK'S LAW DICTIONARY 176 (8th ed. 2004). It, or a receipt, should include the origin and

5

destination points, number of packages, description of freight, and weight, volume or measurement of freight (if applicable to the rating of the freight).  49 C.F.R. § 373.101.

Courts have defined a through bill of lading as a bill of lading in which a carrier agrees to transport goods from a point of origin to a designated point of destination, even though different carriers may perform a portion of the contracted shipment.  See e.g., Altadis USA, Inc. ex rel. Fireman's Fund Ins. Co. v. Sea Star Line, LLC, 458 F.3d 1288, 1289 (11th Cir. 2006); Commercial Union Ins. Co. v. Sea Harvest Seafood Co., 251 F.3d 1294, 1302 (10th Cir. 2001).

Whether a particular document is a through bill of lading is a question of fact, Union Pac. R.R. Co. v. Greentree Transp. Trucking Co., 293 F.3d 120, 127 (3d Cir. 2002), to be determined by examining various factors such as "the final destination indicated on the document, the conduct of the shipper and the carriers, and whether the connecting carriers were compensated by the payment made to the initial carrier or by separate consideration from the shipper," Tokio Marine & Fire Ins. Co. v. Hyundai Merchant Marine Co., 717 F. Supp. 1307, 1309 (N.D. Ill. 1989); Seguros Comercial Américas, S.A. de C.V. v. Am. President Lines, Ltd., 910 F. Supp. 1235, 1239 (S.D. Tex. 1995), vacated on other grounds, 105 F.3d 198 (5th Cir. 1996).

APS's summary judgment evidence to establish through bills of lading consists of two Spanish-language documents, called <u>órdenes de remisión</u> (Dkt. No. 61, Exs. 4, 5), which were prepared by Trafago and said to contain the signature of a FEMA/Indiana driver (Dkt. No. 29, Am. Ex. F ¶¶ 7, 12).[2]  While the Carmack Amendment requires a carrier to issue a receipt or bill of lading, it also provides that failure to do so does not affect the carrier's liability.  § 14706(a)(1).  On the surface, those provisions seem to be internally inconsistent.  Nevertheless, as held in <u>Mapfre Tepeyac, SA v. Robbins Motor Transp., Inc.</u>, the specific requirement in § 14706(a)(1)(C) of a "through bill of lading" necessarily requires a written instrument.  No. H-05-1908, 2006 WL 3694502, at *4 (S.D. Tex. Dec. 13, 2006).  There can be no such thing as an oral through bill of lading.  Therefore, whether or not a written bill of lading is <u>always</u> needed under Carmack, it is clearly needed for Carmack to apply to loss or damage in an adjacent foreign country.

The <u>órdenes</u> submitted by APS do not establish through bills of lading issued by Trafago, FEMA or Indiana, as carrier, to

---

[2] In her sworn declaration, Trafago's President, Laura de la Miyar, states that the FEMA and Indiana drivers respectively "signed" the <u>órden</u> applying to his shipment. (Dkt. No. 41, Am. Ex. F ¶¶ 7, 12.)  The FEMA <u>órden</u> does appear to contain a signature, albeit an illegible one. (Dkt. No. 61, Ex. 4.)  The Indiana <u>órden</u>, however, contains a printed name, "Juan Soto," but it does not appear to be an actual signature. (<u>Id.</u>, Ex. 5.)  Moreover, the remainder of the writings at the bottom of both <u>órdenes</u> appear to be done by the same hand. (<u>See</u> <u>id.</u>, Exs. 4, 5.)

7

APS, as shipper. Each <u>órden</u> describes the goods carried, their weight, and the number of packages. The point of origin is Nuevo Laredo and the point of destination is Puebla/Xalapa. Each document reflects the name of the consignee as either Empacabados S.A. de C.V. (Dkt. No. 61, Ex. 4) or Grupo Maquilador de Xalapa S.A. de C.V (Dkt. No. 61, Ex. 5), neither of which is a party to this case.[3] The sender is stated to be De la Miyar Garza Agencia Aduanal, S.C. The carrier for each shipment is Aril. Neither Defendants nor APS appear on the documents.[4] Also, the documents do not reflect any agreements limiting common-law liability for losses occurring during shipment.

Further, each document reflects that payment is to be charged ("<u>cobrar</u>"), but APS presents no evidence reflecting how Aril, or any other carrier, was to be compensated, nor the amount of compensation. Trafago's President, Laura de la Miyar, avers without contest that the carriers who were to pick up the cargo in Nuevo Laredo "were arranged for, selected by, and contracted with, Plaintiff," which at least suggests that APS was responsible for paying Aril. (Dkt. No. 41, Am. Ex. F ¶ 5.)

---

[3] De la Miyar's declaration suggests that these non-parties would be APS's Mexican <u>maquila</u> partners. (Dkt. No. 41, Am. Ex. F ¶ 5.)

[4] The Court assumes that there may be a relationship between Trafago and De la Miyar Garza Agencia Aduanal, S.C., in that Laura de la Miyar is the President of Trafago. Even so, the <u>órdenes</u> list a Nuevo Laredo address for the <u>agencia aduanal</u> and indicate it is the sender "From: Nuevo Laredo, Tamaulipas." (Dkt. No. 61, Exs. 4, 5 (using English translation of "Origen").) This language cannot be construed as a through bill of lading with a United States point of origin.

Curiously, her affidavit also identifies these "carriers" as Transportes Ibarra and SEPSA Custodias de Valores, S.A. de C.V., but neither name appears on the órdenes. Their relationship to Aril is unclear.

APS argues that handwriting on the bottom of each órden amends the documents and somehow connects the wholly foreign transportation described in the órdenes with the over-the-border carriage, which began at Trafago's warehouse in Laredo and had a destination in Nuevo Laredo. As the Court understands, APS's argument is that Trafago, and perhaps FEMA/Indiana, are liable under Carmack based on three theories. The first is that the handwriting converts the órdenes to through bills of lading by Trafago to carry the goods from Laredo to Puebla/Xalapa. Alternatively, because of the handwritings, the órdenes become through bills of lading by Trafago, or perhaps FEMA/Indiana, for transportation from Laredo to Nuevo Laredo. Finally, Trafago, and perhaps FEMA/Indiana, are liable under Carmack based on oral agreements to transfer goods from Laredo to Nuevo Laredo. The Court rejects all three theories.

The Court concludes that the only way a carrier can be liable under Carmack for a loss in Mexico is if the loss occurred during transportation under a written through bill of lading, or similar document. The only documents that could possibly fit that description are the two órdenes in evidence.

9

Those documents specifically pertain to transportation entirely between Mexican locales. Signatures or handwritten notes of uncertain origin on those documents cannot convert them into through bills of lading from Laredo to any Mexican locale.

## Conclusion

For the reasons above, Plaintiff's motions for summary judgment (Dkt. No. 29 in L-08-26 and Dkt. No. 36 in L-08-62) are DENIED. Defendants' joint counter-motions for summary judgment (Dkt. No. 42 in L-08-26 and Dkt. No 44 in L-08-62) are GRANTED as to Plaintiff's Carmack claims and DENIED as to all remaining claims.

The remaining claims are based on state tort or contract common law. The parties are DIRECTED to complete whatever discovery they deem appropriate on those claims and file a status report by April 27, 2009.

DONE at Laredo, Texas, this 28th day of March, 2009.

*George P. Kazen*
United States District Judge